NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIE GILYARD, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 13-3299 (SDW) <br><br> **OPINION** <br><br> February 27, 2014 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Julie Gilyard's ("Plaintiff" or "Gilyard") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Joel H. Friedman's ("ALJ Friedman") denial of Gilyard's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **vacates** and **remands** ALJ Friedman's decision.

**FACTUAL BACKGROUND**

Plaintiff was born on September 19, 1959. (R. 128.) She has earned her GED. (R. 33.) Plaintiff worked as a machine operator and engaged in moving material weighing over fifty pounds and drilling holes. (R. 43-44.) She stopped working because she had surgery for her arm

and a hernia.  (R. 49.)  Plaintiff has an earnings record from 1978 to 1985 and from 1997 to 2002.  (R. 139, 176.)  She alleges disability due to diabetes, hypertension, asthma, emphysema, and morbid obesity.  (R. 26-27.)

The record indicates that there are limited medical records, only one of which is dated prior to Plaintiff's last insured date.  (R. 194-296.)   From August 3, 2007 to August 5, 2007, Plaintiff was admitted to Marion County Medical Center with complaints of dyspnea and wheezing.  (R. 203.)   She had a history of asthma for the past two years.  (R. 203.)  Plaintiff was found to have undiagnosed hypertension, diabetes mellitus, obesity, and elevated blood sugar. (R. 203.)  Her treatment included hand-held nebulizers.  (R. 203.)  By August 5, 2007, Plaintiff's wheezing stopped and she was discharged.  (R. 203.)

On April 27, 2009, Plaintiff underwent inpatient treatment at the University Hospital in Newark, New Jersey for hyperglycemia and a urinary tract infection.  (R. 219.)  She was treated with fluids, diabetic medication, education by a dietician, and high blood pressure medication. (R. 220-21.)  She was discharged on April 29, 2009. (R. 221.)

From May 19, 2009 through July 16, 2009, progress notes from Dr. Theodore Dacosta indicate that Plaintiff was treated for shortness of breath, cough, asthma, hypertension, and diabetes mellitus.  (R. 281-84.)

At the May 10, 2011 hearing before ALJ Friedman, Plaintiff testified that she had knee pain and breathing problems.  (R. 33.)  She testified that she went to the emergency room in 2010 and was hospitalized for five days for trouble breathing, bladder infection, sugar problems, and high blood pressure.  (R. 41-42.)  She further stated that she weighed 350 pounds in 2007 and weighed 395 pounds at the time of the hearing.  (R. 47-48.)

**PROCEDURAL HISTORY**

On March 18, 2010, Plaintiff filed an application for SSDI Benefits alleging disability beginning on August 7, 2007. (R. 128-34.) The Social Security Administration (the "SSA") denied Plaintiff's application initially and on reconsideration. (R. 71-75; 79-80.) Plaintiff requested a hearing before an ALJ, which was held on May 10, 2011 before ALJ Friedman. (R. 81.) On December 22, 2011, ALJ Friedman issued a decision finding that Plaintiff was not disabled because her RFC was consistent with jobs in the national economy. (R. 8-18.) On March 27, 2013, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently filed an appeal in the District of New Jersey. (R. 1-6.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual is considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. §

423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]" 42 U.S.C. § 423(d)(5)(A).

In determining disability, the SSA utilizes a five-step sequential analysis. See 20 C.F.R. § 416.920; see also Cruz, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. See 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. See id. Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. See id.

The primary issued raised in Plaintiff's appeal is whether the Commissioner's decision is supported by substantial evidence.

### I. Step One:  Whether Plaintiff has performed any "substantial gainful activity"

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). See 20 C.F.R. 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. See 20 C.F.R. 416.972(a). If an individual engages in SGA, she is not disabled regardless of the severity of her physical or mental impairments. See

Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If the individual is not engaging in SGA, the ALJ proceeds to the next step. See id.

Here, ALJ Friedman properly found that Plaintiff had not engaged in SGA since August 7, 2007, the alleged onset date of her disability, through the date she was last insured, September 30, 2007. (R. 11, 13.)

## II. Step Two: Whether Plaintiff has a "severe" impairment or combination of impairments affecting his ability to do basic work activities

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. See 20 C.F.R. 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. See id. If the claimant does not have a severe impairment or severe combination of impairments, she is not disabled. See 20 C.F.R. 416.972(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. See id.

At step two, ALJ Friedman properly determined that Plaintiff had the following severe impairments: morbid obesity, asthma, hypertension, and diabetes. (R. 13.)

## III. Step Three: Whether Plaintiff's impairment matches or is equivalent to a listed impairment

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc.

6

Sec., 99 F. App'x. 376, 379 (3d Cir. 2004).  When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204 F.3d at 85.  The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).  The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings.  See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citing Burnett, 220 F.3d at 119-20).

Here, ALJ Friedman determined that Plaintiff did not have impairments that matched or were equivalent to a listed impairment.  (R. 13-14.)  Plaintiff argues that ALJ Friedman failed to assess the combination of Plaintiff's obesity, hypertension, pulmonary disease, and diabetes together.  (Pl. Br. 11.)  Moreover, Plaintiff argues that ALJ Friedman erred in not adequately addressing Plaintiff's obesity.  (Id.)

In reviewing ALJ Friedman's decision, this Court finds that he properly conducted an analysis of Plaintiff's impairments at step three.  ALJ Friedman specifically noted that there was no specific medical listing for obesity, but he evaluated the impairment based on the guidelines set forth in SSR 02-1p.  (R. 14.)  Per SSR 02-1p, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." (Id.)  ALJ Friedman "considered obesity in the context of the overall record evidence in making this decision."  (Id.)  Furthermore, ALJ Friedman properly considered Plaintiff's hypertension, pulmonary disease, and diabetes and noted that they did not meet or equal the criteria of any listed impairments.  (Id.)  Accordingly, this Court is satisfied with ALJ Friedman's evaluation of Plaintiff's impairments at step three.

7

### IV. Whether the ALJ properly determined Plaintiff's RFC

After step three, but before considering step four, the ALJ must first determine the claimant's RFC. See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. See 20 C.F.R. § 404.1545. In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 416.920(e), 416.945.

In the instant matter, ALJ Friedman determined that Plaintiff "had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567.(a)." (R. 14.) ALJ Friedman further stated that Plaintiff "needed to avoid even moderate exposure to temperature extremes, wetness, humidity, respiratory irritants and hazards, and could perform all postural activities on an occasional basis." (R. 14.)

In making this assessment, ALJ Friedman reviewed and relied on the limited medical reports on the record. (R. 14.) Specifically, he analyzed and discussed each medical record extensively including Plaintiff's history of obesity and diabetes. (R. 14.) He also considered Plaintiff's testimonial evidence conveyed at the hearing where she discussed her knee pain, breathing problems, and obesity. (R. 14.) However, ALJ Friedman noted that despite Plaintiff's complaints of knee problems and trouble bending and twisting, no medical evidence supported her claim. (R. 14.) He indicated that there was no medical evidence regarding Plaintiff's specific weight as of the date she was last insured and the "thrust of [her hospital] visit was her breathing problems." (R. 14.)

## V. Step Four: Whether Plaintiff had the RFC to perform the requirements of her past relevant work

At step four, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work. See 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. See id.

In this case, ALJ Friedman determined that Plaintiff could not perform her past relevant work. (R. 17.) He noted that Plaintiff "stopped working as a machine operator in April 2002 due to her inability to perform her duties to the fullest." (Id.) ALJ Friedman stated that the job was "a heavy job" per the Regulations. (Id.)

## VI. Step Five: Whether Plaintiff is able to do any other work considering her RFC, age, education, and work experience

At step five, the Commissioner must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant establishes the first four steps and demonstrates that her impairment prevents her from performing any of her past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. See 20 C.F.R. § 416.920(g); Kangas, 823 F.2d at 777; Malloy v. Comm'r of Soc. Sec., 306 F. App'x. 761, 763 (3d Cir. 2009). The regulations allow the use of a vocational expert in reaching this decision. See 20 C.F.R. § 404.1566(e).

The ALJ must consider whether the claimant has exertional or nonexertional limitations. See C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. A limitation is nonexertional if it affects the claimant's "ability to meet the

9

demands of [a job] other than strength demands." Id. If the limitations are solely exertional, the ALJ can use medical-vocational guidelines to determine whether the claimant can perform any other job in the national economy. Id. Also, if the claimant retains the mental capacity to perform unskilled work, the ALJ may rely on the medical-vocational guidelines. See Davis v. Astrue, No. 08-928, 2009 WL 3241853 *at 6 (W.D. Pa. Oct. 5, 2009). However, if there are both exertional and nonexertional limitations, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national economy that the claimant can perform. See Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).

In the instant matter, after considering Plaintiff's age, education, work experience, and RFC, ALJ Friedman concluded that there are a significant number of jobs in the national economy that Plaintiff could perform. (R. 17.) In reaching this conclusion, ALJ Friedman relied heavily on the RFC assessment that Plaintiff could perform "the full range of sedentary work." (R. 17.) Further, he noted that "the non-exertional limitations in this case . . . do not significantly erode the sedentary occupational base and therefore [Plaintiff] is not disabled." (R. 17-18.) ALJ Friedman did not consult a vocational expert in making this determination. (R. 17-18.)

Plaintiff argues that ALJ Friedman erred in making a determination of Plaintiff's non-disability without relying on a vocational expert. (Pl. Br. 18.) Plaintiff's contention is based on ALJ Friedman's exclusive reliance on the medical-vocational guidelines to conclude that there are a significant number of jobs in the national economy that Plaintiff could have performed, despite finding that Plaintiff had exertional and nonexertional limitations.

Based on the record, this Court agrees that a vocational expert should have been consulted. In determining the RFC, ALJ Friedman found that Plaintiff had exertional limitations which limited Plaintiff to a purely sedentary base. (R. 17.) Although he did not find Plaintiff's

10

claims concerning her postural or manipulative limitations to be credible, ALJ Friedman noted that Plaintiff's breathing problems posed a nonexertional, environmental limitation. (R. 14-17.)

However, despite finding that Plaintiff had both exertional and nonexertional limitations, ALJ Friedman relied solely on the medical-vocational guidelines in determining Plaintiff's non-disability. (R. 17.) In Sykes, the Third Circuit held that where a Plaintiff has both exertional and nonexertional limitations, the Commission "cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact." 228 F.3d at 261. Here, ALJ Friedman neither consulted a vocational expert nor provided notice to the claimant.

The Commissioner argues that where a Plaintiff has nonexertional limitations, an ALJ may rely on a Social Security Ruling ("SSR") in lieu of a vocational expert where the SSR is directly on point regarding how the nonexertional limitations may impact the claimant's ability to work. (Def. Br. 12 (citing Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005)).) As it relates to this case, the Commissioner contends that ALJ Friedman relied on SSR 96-9p to discuss how Plaintiff's nonexertional limitations impact her ability to work; thus, a vocational expert was not required. (Id.)

The Commissioner's reliance on Allen is misplaced. Unlike the instant matter, the claimant in Allen had purely nonexertional limitations. Allen, 417 F.3d at 401. Moreover, the Allen court relied on an SSR that specifically and clearly addressed the narrow issue at hand. Id. at 405. Here, SSR 96-9p does not address Plaintiff's circumstances where a claimant has only environmental limitations. SSR 96-9P (S.S.A July 2, 1996) ("Even a need to avoid all exposure

to these conditions would not, *by itself*, result in a significant erosion of the occupational base." (emphasis added).

Based on the foregoing, this Court remands this matter for further analysis to provide clarity and input from a Vocational Expert.

**CONCLUSION**

For the foregoing reasons, this Court **VACATES** ALJ Friedman's decision and **REMANDS** this matter for further proceedings consistent with this Opinion.

s/ Susan D. Wigenton, U.S.D.J.